**Junior Lee EDWARDS, Appellant,**

v.

**Verna Louise EDWARDS, Respondent.**

No. 22597.

Kansas City Court of Appeals.

Missouri.

May 6, 1957.

Allen & Ramsey, Thomas J. Allen, Mason A. Ramsey, Kansas City, for appellant.

Robert G. Oberlander, Kuraner, Freeman, Kuraner & Oberlander, Kansas City, for respondent.

BROADDUS, Presiding Judge.

This is an appeal by the father from an order modifying a decree of divorce. The order appealed from awarded the general custody of the minor child to the mother. It provided, however, that the father should be allowed to visit the child at any time that he is in St. Louis, and that he should have its custody from the 15th day of June until the 15th day of August in each year.

Appellant and respondent were married on September 17, 1949. They were divorced July 28, 1954. One child, Wands Lee, was born of the marriage. At the time of the marriage respondent was seventeen years of age, and lived on a farm near Higginsville, Missouri.

According to respondent, at the time she and appellant decided to obtain a divorce they went together to the office of a lawyer employed by appellant. The lawyer advised her to let appellant get the divorce "because he would pay for it, that I didn't have no money." When she asked the lawyer who would get custody of the baby, he told her the court would decide that. She said that she told the lawyer that she wanted to be present when the divorce case was heard in order to find out about the custody of the baby. He told her that he would notify her of the date to be in court. She called him before 30 days had elapsed. He told her he would be in touch with her, but never called. When she again called him (in the month following the divorce) he told her the divorce had already been granted and the court had given custody of the baby to appellant. Respondent immediately consulted another attorney, and "he told me I didn't have no money to keep her (the baby); that I might as well drop the whole thing, because I would never get her, you know, by not having anything. I'd have to board her out if I got her."

The divorce petition was devoid of any allegation that respondent was immoral or otherwise an unfit person to have custody of the baby.

At the time of the divorce respondent was living with her sister in a furnished apartment, and making $35 per week. She had no home or any place to take care of the little girl, then two years old.

Since the original decree, respondent has remarried. She and her husband, Kirby Alexander, live at 6142 Wilson Street, in St. Louis, Missouri. This home has two bed-rooms, with a full basement, a yard, and is in a nice neighborhood. Respondent got a job in St. Louis and set about earning money to buy furniture for the home. She has furnished the home with new furniture, a stove and refrigerator. These furnishings are paid for. She has $300 in the bank. She testified that if given custody of her daughter, she would stop working. She feels that the little girl is in need of her mother's care and attention.

Respondent's husband has been steadily employed on one job for more than a year and a half. His salary is $360 per month. He has opportunities for advancement. He desires very much that respondent have custody of the little girl, and is willing to support the child out of his income. His military service is completed.

Ever since appellant and respondent separated, she has seen her child as often as she could, making numerous trips from St. Louis to Kansas City for that purpose. Sometimes appellant's mother denied her the right to see the child. At one time, in 1955, respondent's present husband gave up a good job in St. Louis, and they moved to Kansas City so that respondent could could be closer to her daughter. Since the separation respondent has provided the child with just about everything she wore. She bought her things for Christmas and such as that.

Appellant's mother takes care of the child all the time, and has since the divorce was granted. Respondent concedes that appellant's parents are good people and that they have kept the child "clean, clothed and in good health."

Under the Statute, Section 510.310, subd. 4 RSMo 1949, V.A.M.S., we are required to "review the case both upon both the law and the evidence" and arrive at our own conclusion as to what disposition of the child's custody will be to its best welfare; "due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses", and "the judgment shall not be set aside unless clearly erroneous."

In our opinion, under the facts which we have set out in some detail, the trial court reached the correct conclusion. Certainly it cannot be said that its judgment was *clearly erroneous*.

Our courts have always been strongly inclined to feel that the proper place for infants, particularly girls of tender age, is with their mother. As was said in Long v. Long, Mo.App., 280 S.W.2d 690, 695: "With all his technological and social advances man has found no substitute for the care and affection of a mother." And as this court said in the case of Keith v. Keith, Mo.App., 95 S.W.2d 669, 672:

"In contests between parents for the custody of a child, the age of the child is an important matter to be considered; and if the child be one of tender years, it needs, above all else, the tender love and affection of a mother; and, if all else be equal, the child should be given into the custody of the mother."

The judgment is affirmed. All concur.