Betty SARTIN, Plaintiff-Appellant,

v.

George Edward SARTIN, Defendant-Respondent.

No. 7967.

Springfield Court of Appeals.

Missouri.

Sept. 26, 1961.

Floyd L. Sperry, Jr., Clinton, for appellant.

William J. Cason, Clinton, for respondent.

McDOWELL, Judge.

Plaintiff appeals from a judgment rendered in the Circuit Court of St. Clair County, Missouri, granting defendant a divorce and custody of two minor children on his counterclaim. The petition and counterclaim alleged indignities as grounds for divorce and both parties asked for custody of the minor children.

Plaintiff's petition, filed in St. Clair County, August 15, 1958, alleged, inter alia, that she faithfully demeaned herself as wife of the defendant and discharged all her duties as such but defendant, in disregard of his marital duties, offered to her such indignities as to render her condition as his wife intolerable; that defendant, while in the military service, stationed in Germany, became abusive to plaintiff, associated with other women, wrongfully accused plaintiff of misconduct, showed no interest in plaintiff and children until after plaintiff left defendant and returned to the States.

It alleged that two children were born of the marriage, Larry Wayne, age 4, and Jerry Lynn, age 3. It pleaded that plaintiff is the proper person to have custody of said children. The prayer was for a decree of divorce, custody and control of the children, award of temporary alimony, child support and attorney fees.

Defendant's answer is a general denial and counterclaim. The counterclaim alleged that defendant faithfully demeaned himself as husband of plaintiff and discharged all his marital duties but plaintiff offered him such indignities as to render his married life intolerable; that plaintiff is possessed of a violent and ungovernable temper, flies into fits of anger without cause; that she did not treat defendant with love and affection and associated with other men.

It pleads that defendant is a proper person to have custody of the minor children and prays for a divorce and custody of the children.

The regular Judge of the Circuit Court of St. Clair County was disqualified by change of venue and Honorable William M. Kimberlin, Judge of the 17th Judicial Circuit was by the Supreme Court transferred to said county to hear the cause. Trial was had December 27, 1960, and judgment rendered for the defendant on plaintiff's petition and for him on his counterclaim awarding decree of divorce and custody of the two minor children.

The decree ordered defendant to deliver the children to plaintiff at 7:00 o'clock P.M. on Friday of each week and that plaintiff have custody thereof until 7:00 o'clock P.M. on Sunday following, when defendant was to pick them up at plaintiff's residence and take them to his home. Plaintiff was further awarded custody of the children during the month of June each year, defendant to have custody from 7:00 o'clock P.M. on Friday of each week until 7:00 o'clock

P.M. the following Sunday, during the said month and was required to pick up said children and deliver them from plaintiff's residence to his home and to pay to plaintiff $60 for child support for the month of June. Plaintiff was awarded judgment of $150 attorney fees.

The parties were married in St. Clair County September 12, 1953, and lived in and around Clinton, Henry County, until 1956, when defendant joined the army and they were transferred to Germany. Two children were born of the marriage, Jerry Lynn, 5 years old and Larry Wayne, now 6 years of age. The parties had little difficulty until they reached Germany. Defendant was stationed at Carle Rouge and the parties lived in government quarters on the base close to defendant's work.

Plaintiff's evidence is: That she arrived in Germany in November, 1956, and after 19 months was separated from her husband and returned to the United States with her children. The cause of the separation was that defendant would go out with fellows, stay away from home, ignore the children and do a lot of drinking; that he accused plaintiff of immorality; complained that she had not taken care of the children; that he hit her, tortured her by twisting her arm, threatened to knock her out and threatened her with a hot iron and a belt. She testified that defendant came home in an intoxicated condition on numerous occasions; that he would not tell her the truth and she never knew when to believe him; that he went to work in the morning, worked 24 hours and, sometimes, she would not see him for another 24 hours; that he embarrassed her and was very rude to her in the presence of friends, told her he did not love her and assaulted her in the presence of the children; that this condition became generally worse; that he fussed all the time so that she could no longer live with him; that defendant did not come home to see her but to cause more trouble and, because of fear of her physical well-being and in order to protect herself and the children, she came back to America. The separation took place in June, 1958. Plaintiff stated she wanted to get away three months before that time but was afraid defendant would not consent to her returning home so that she could get reservations for government transportation. She stated she has not lived with defendant since the separation; that she always treated him with kindness and affection.

After plaintiff's return to America she lived with her father until March, 1959, and received allotment checks of $156 per month until defendant was discharged in November, 1959. In March, 1959, plaintiff moved to Kansas City and lived with her sister, obtained employment and has been continuously employed at $225 per month since that time.

In January, 1960, the defendant got an order from the court obtaining custody of the minor children from Friday evening until Sunday evening and was ordered by the court to pay $40 per month child support.

In November, 1960, plaintiff rented a one room apartment where she and the children moved. She employed a baby sitter for the children while she worked. She got them up at 6:30 A.M., took them to the baby sitter, who had a one room apartment, and the older child stayed there until 7:40 when he would walk some three and one-half blocks to school, having to cross streets. The younger child stayed until 11:30 when he walked to kindergarten. The older boy got out of school at 2:30 and the younger at 3:30 when they returned to the home of the baby sitter and were picked up by their mother at 5:00. This occurred four days a week because defendant picked them up on Friday before plaintiff came from work.

Plaintiff's testimony as to defendant associating with other women was that on one occasion when he came for the children a woman was in the car with him; that while in Germany she never saw him with a woman but that, on one occasion, he had a picture of a woman, whom, he stated, had a baby who looked like his older boy. She

testified that others had told her defendant had been with other women.

As to drinking plaintiff testified she did drink some while in Germany but not to excess. She admitted going to bars with neighbor women and that she and her husband had gone to parties and drank. She stated she had been intoxicated. She admitted that on the evening before she returned to America she and her husband had bought large quantities of whiskey and other drinks for her farewell party.

Plaintiff admitted that during the last year she has been entertaining men in her apartment, both day and night; that they have been drinking there; that she has been out with a man visiting her sister and they had drinks; that this association with other men had occurred on many occasions. When asked how long the gentlemen visitors remained in her home she stated from 10:30 until 11:00 o'clock P.M., and maybe longer.

Plaintiff offered testimony as to her good reputation for chastity and morality.

Defendant testified that he arrived in Germany on July 5, 1956, and that plaintiff and the children came around December 5th; that for approximately one year or a little better they seemed to get along as well as any married couple. He testified the trouble started when they moved into government quarters; that their next door neighbors were Americans and considerably older than his wife; that it was at this time plaintiff started running around with these older women, wives of professional soldiers, and they drank a lot; that she fell in with this crowd, would not stay home, left the children in the apartment by themselves or with a colored woman who lived across the hall, who would look in on them once in a while. He testified he had come home and found the children alone. He said his wife drank excessively, got intoxicated; that they had arguments over plaintiff's drinking, going out to parties with both men and women, leaving the children alone

or with a baby sitter. He mentioned one occasion where she left the children with a twelve year old girl and another time when she stayed away all night with friends. Defendant stated they had trouble about plaintiff associating with one of the soldiers and he offered in evidence a photograph where she was with him and another soldier; that he saw his wife on different occasions in taverns drinking with men and women.

Defendant testified he made arrangements for his wife and children to return home and gave her $270 the day she left; that they returned June 22, 1958; that he left Europe on July 1st to return, and, on the day of his return, he went to see his family at Clinton. He said that on the first day his wife permitted him to take the children but never would allow him to take them again. He testified he came home for the purpose of talking to his wife about a reconciliation but that she would have nothing to do with him and became very violent; that he returned to Europe August 27th and, while there, never received any word from his wife or children except one letter asking for money. He testified he came to Kansas City January 13, 1959, tried to find his children, but, at first, could not locate them. He said he received an honorable discharge from the Army on November 10, 1959; that his rank was Sergeant first class. He said at that time plaintiff was living in Kansas City; that he had a notice served on her to take the children on Thanksgiving but plaintiff refused the request; that he then secured an order of the court granting him the privilege of having the children with him on weekends from Friday evening until Sunday evening.

He testified that he at all times treated his wife with love and affection and discharged his duties as her husband but that on different occasions he saw men going into plaintiff's apartment in Kansas City and that she was continually associating with other men. He denied ever having gone with any other women and informed the court that if he were granted the custody of the children he would make his

home with his father and mother, who are now in their 40's, and live on a farm near Clinton. He described the home as a suitable place for the keeping of the children. He testified his mother was in good health and was willing to keep them if he should be granted their custody. His father is now sheriff of Henry County. The evidence shows a school bus runs by the farm to a nearby school.

Defendant offered evidence of his good reputation for truthfulness and morality. His evidence shows that the farm where he intends to live after January is near Kansas City and that he will drive daily to his work and return.

Defendant's mother testified she was 46 years old and her husband 45 years of age; that her youngest son is now 20; that the farm on which they will live is six miles from Clinton; that she will care for and keep the children in school for defendant.

At the close of the evidence the court was permitted to, and did, talk with the children before rendering his judgment. The court, in his comment, which is not a part of the judgment, stated that in granting defendant the custody of the children he was expecting the paternal grandmother, after talking with her, to care for them, see that they were in school and that the children's mother will have custody of them from 7:00 o'clock P.M. on Friday until 7:00 o'clock P.M. on Sunday. The court specifically stated that defendant was not to keep these children in a trailer house or have a baby sitter with them. He said the father will have custody so long as he lives with his parents and the children can go to Shawnee Mound School.

In our opinion we will refer to appellant as plaintiff and to respondent as defendant, the position occupied by them in the lower court.

Plaintiff relies for reversal in this case upon two alleged errors. First, that defendant, by undisputed testimony and his own admissions, is not an innocent party as a matter of law and the court erred in granting him a decree of divorce. Secondly, the court erred in awarding custody of the two children to defendant for it is contrary to the best interest and welfare of the children.

■ In a divorce action, the appellate court must review all the evidence and reach its own conclusion as to the proper judgment, but great deference is paid to the findings of the trial court who had the parties before him. Langshaw v. Langshaw, Mo.App., 331 S.W.2d 15, 18 [1]; Price v. Price, Mo.App., 311 S.W.2d 341.

■ One seeking a divorce is not required to conclusively prove freedom from all fault, but only that, under all of the circumstances of a particular case, he has not been guilty of conduct constituting a ground or grounds for divorce under Section 452.010 RSMo 1959, V.A.M.S.; Pippas v. Pippas, Mo.App., 330 S.W.2d 132, 137 [7, 8] and cases cited therein.

■ In this state an action for divorce is a statutory suit at law, yet, it does, nevertheless, partake in the nature of a suit in equity and is triable as such by the circuit court and de novo as such on appeal. It is, therefore, the rule for appellate consideration that the court review the evidence afresh and redetermine the ultimate issues in the light of that examination as it sees and understands those issues, but always according deference to the honorable trial judge as to the weight of the evidence and especially as to credibility of the witnesses. Paxton v. Paxton, Mo.App., 319 S.W.2d 280, 282 [1, 2]; Clark v. Clark, Mo.App., 306 S.W.2d 641, 646; Franklin v. Franklin, 365 Mo. 442, 283 S.W.2d 483, 485 [6–8].

■ The burden of proof is on the applicant for divorce to show that he or she is an innocent and injured party, whether it be a contested or an ex parte case. Langshaw v. Langshaw, supra, 318 S.W.2d at page 18 [2]; Simon v. Simon, Mo.Sup., 248 S.W.2d 560, 562 [1]; Franklin v. Franklin, supra, 283 S.W.2d at page 485 [6, 8].

In the instant case the trial court found that plaintiff was not the innocent and injured party. From this judgment plaintiff does not complain. However, plaintiff contends that by the undisputed testimony and admissions of defendant his proof fails to establish that he was the innocent and injured party and, as a matter of law, the court should have denied him a divorce.

The evidence offered touching upon the grounds for divorce of each of the parties consisted of their testimony. It is true that plaintiff testified to indignities committed by defendant; that he associated with other women; that he fussed and continually quarreled at plaintiff; that he threatened her with bodily harm, all of which would constitute such indignities, if believed by the court, as to bar him from a divorce.

■ In this state it is well established as a general rule that the triers of the facts, under their duty to weigh the evidence, may believe or disbelieve any testimony affirmatively or defensively adduced by either of the parties, although such testimony is uncontradicted or unimpeached. State ex rel. Rice v. Public Service Commission, 359 Mo. 109, 220 S.W.2d 61, 65; Beckemeier v. Baessler, Mo.Sup., 270 S.W. 2d 782, 787; Adam Hat Stores v. Kansas City, Mo.Sup., 316 S.W.2d 594, 598 [3, 5] [En Banc]; Thurston v. Hobby, D.C., 133 F.Supp. 205, 210 [4–6].

■ The defendant, however, testified that the marital difficulties which caused the separation started about a year after the parties were transferred to Germany; that plaintiff started drinking to excess, going out with older women and men, becoming intoxicated, and that her conduct with neighbor men caused trouble in the family. He testified that this acquired habit of drinking on the part of plaintiff caused her to neglect the care of her minor children; that she would leave them in their apartment alone and go out on drinking parties or under insufficient care of a negro woman, and, at one time, with a twelve year old girl.

Defendant's evidence is that prior to plaintiff's return to the United States for some months they did not live together as man and wife; that plaintiff returned home in June, 1958; that in July he followed plaintiff back to the United States, went to her home and tried to talk to her about a reconciliation but that she refused to have anything to do with him; that thereafter, he returned to Germany and, later, January 13, 1959, came back to Kansas City. The evidence is that at that time plaintiff was working in Kansas City and living in a one-room apartment with the children; that on numerous occasions plaintiff had men visitors in her home where they had drinks and, in some instances, she went out in public with them. This testimony plaintiff admits. The evidence is further that defendant, in order to see his children, had to get a court order. Defendant expressly denied that he had ever associated with other women and we think the proof offered is insufficient to sustain plaintiff's contention of that issue.

Under the evidence the trial court was justified in finding that the defendant was the innocent and injured party and in granting him a divorce.

In the argument before this court it was apparent that plaintiff was not interested in the granting of the divorce to the defendant but her primary concern was with her second alleged error, to-wit, the custody of the two minor children who are now six and seven years of age.

Under this alleged error plaintiff contends that the court erred in granting to defendant the custody of the children; that his judgment is contrary to their best interest and welfare.

To sustain this contention plaintiff relies upon Ballew v. Ballew, Mo.App., 288 S.W. 2d 24, 26 [3–5], in which the court stated:

"It is not necessary to cite authority for the proposition that the welfare of the chil-

dren of a divorced couple is the paramount object in determining the matter of custody. Courts have said, at various times, that, all things being equal, custody should be granted to the mother, especially as to the very young children, and as to girls. But, always, the court must act in the best interests of the children, thereby sometimes being required to deny custody to either parent."

Clark v. Clark, Mo.App., 306 S.W.2d 641, 647 [6, 7] states the law:

"* * * However, in determining such matters the rule is that the court shall decide only as the best interest and welfare of the child itself may seem to require. Section 452.150 RSMo 1949, V.A.M.S."

McKenzie v. McKenzie, Mo.App., 306 S.W.2d 588, held that the fact that either party prevails in a divorce case is not the determining factor in awarding the custody of the children involved; that custody of children should never be awarded as a means of punishing one parent or rewarding the other. The determinative factor in awarding custody is the welfare of the child; that it is quite naturally considered that very young children and particularly girls should be in the custody of their mother unless she is demonstrably unfit to assume their proper care.

In Paxton v. Paxton, Mo.App., 319 S.W. 2d 280, 287 [8–9], the court stated:

"Usually in custody matters the choice is restricted to the two parents. Our courts have announced some general conclusions which, although not unalterable, are exclusively recognized and applied in determining the entitlement of a mother and of a father to the custody of their minor children. We quote briefly from some such cases. In Ballew v. Ballew, Mo.App., 288 S.W.2d 24, loc. cit. 26, this court said: 'Courts have said, at various times, that, all things being equal, custody should be granted to the mother, especially as to the very young children, and as to girls. But, always, the court must act in the best in-

terests of the children, thereby sometimes being required to deny custody to either parent.' "

■ The law is so well settled in Missouri that it is needless to quote the many decisions relating to the custody of minor children. All things being equal, the courts are inclined to feel that the proper place for minor children is with their mother, although the rule is by no means an inflexible one. If she is able to give her undivided attention to their care, while the husband would be forced to leave them with relatives for considerable periods of time, because of his business affairs, then custody would naturally be left with the mother, even though the father might have been awarded a divorce.

■ In the instant case, however, the trial court was confronted with a different situation. The boys are of tender age, now six and seven years. The mother lives in a large city, Kansas City, in a one-room apartment. She is forced to be, and is; employed continuously. She admits that she has to get these little children up at 6:30, feed them their breakfast and take them over to another one-room apartment to stay with a baby sitter; that this baby sitter then sends the older child to school at about 7:40 and the younger one to kindergarten about 11:30. They must either walk through the traffic on dangerous streets to school or be taken by the baby sitter (as the evidence showed) sometimes in bad weather. They get out of school at 2:30 or 3:30 in the afternoon, go back to stay with the baby sitter until their mother returns from work. We think the court's order and judgment placing these children in the custody of their father under the conditions that he live in the country with defendant's parents would be to the best interest of the children. There they will have someone to care for them at all hours during the day while they are at home who is intensely interested in them. While it is not in the judgment of the court that defendant keep them in the home of his

parents, yet, if he does not do so, the custody of the children can always be changed on proper motion.

Under the evidence plaintiff will not be deprived of being with the children except on the days she is at work and a part of the time during the vacation period. The order requires the defendant to deliver these children to plaintiff's residence at 7:00 o'clock P.M. on Friday of each week to leave them with her until 7:00 o'clock P.M. Sunday. It, likewise, places custody in plaintiff for the month of June except on week ends when they are to be with defendant.

Always child custody presents a most serious and trying problem. The trial judge in the instant case found it to be so. The parents, actually, are not in a position to properly care for such children and we respect the trial court's judgment in requiring that these children of tender years be kept by the father in the home of his parents where they will have proper care. Custody of these children is to be given neither as a reward to one parent nor, yet, is it to be withheld as a punishment to the other parent. The proper test is namely, *what is best for the children*? Such is the law and it is the law of wisdom unless both parents are utterly unfit, custody must be granted to one or the other and so we look to these two existing alternatives. What kind of a home life would the mother provide and what kind can the father provide and continue to work and earn a living? Plaintiff must day by day entrust the care of these boys to a maid. The defendant must entrust the care of the children to his mother. The evidence shows the grandparents are middle aged people, in their 40's, in good health, possess the financial and spiritual requirements necessary for the training of these children. It is true the children are now only six and seven years of age. Considering the kind of care the children have been provided with we think that the trial judge in his wisdom has acted in the best interest of these children.

Judgment affirmed.

STONE, P. J., and RUARK, J., concur.