**Dorothy J. BRAND, Plaintiff-Appellant,**

**v.**

**Archie W. BRAND, Defendant-Respondent.**

**No. 8803.**

Springfield Court of Appeals,
Missouri.

May 16, 1969.

James R. Spradling, Birkhead, Spradling & Phelps, Carthage, for plaintiff-appellant.

No appearance for defendant-respondent.

HOGAN, Presiding Judge.

This case is, at least nominally, an action to modify the child custody provisions of a decree of divorce. Involved and at issue is the custody of eight of the parties' ten children. The trial court has awarded general custody of the children to the defendant, and the plaintiff has appealed.

We are not advised when the plaintiff and defendant were married, but they were divorced on April 20, 1966, in the Circuit

Court of Jasper County, Missouri. During their marriage, they became the parents of ten children. At the time this action was tried, the two eldest children—boys—had reached their majority and were in military service. Five of the eight remaining children were living with Mr. Brand at trial time, and the youngest three were with their mother.

Before their divorce, Mr. and Mrs. Brand lived on a farm near Jasper, Missouri. We take it, though it is not clearly shown, that they separated some time before their divorce, on the advice of a "marriage counselor." Mr. Brand moved into a nearby house which belonged to his sister, and while the parties were separated, but before they were divorced, the children were cared for alternately by one parent and then the other. Apparently on the basis of this experience and in part of necessity, the parties agreed prior to their divorce that custody of the children would be awarded to them "jointly." They filed a property settlement incorporating this agreement with the trial court before the divorce was granted. The trial court approved the property settlement when it granted plaintiff a decree of divorce, and ordered that care, custody and control of the minor children "be awarded to the Plaintiff and Defendant jointly."

This arrangement seems to have worked well, or at least acceptably, for a while. As Mr. Brand put it, " * * * she [plaintiff] had most of the children over there because she had the best place to live and I would take care of them when she was gone, a good part of the time, and they would come over and visit me once or twice a week each week, all of them or part of them, especially the younger ones." Two of the children, Phillip, 14, and Henry, 13, stayed most of the time with Mr. Brand, while the youngest three children spent most of their time with their mother, but all the children, during this period, had the pleasure and benefit of association with both parents.

In the spring of 1967, Mrs. Brand embraced a new religion. Mrs. Brand testified that while she had regularly attended church all her life, she had felt for some time that her spiritual needs were not being satisfied. After some consideration, she was baptized in the Church of Christ, and decided that she "could make a new start much better in a different locality." Plaintif moved to a rented house in Carthage, taking the youngest three of her children. After the plaintiff moved to Carthage, the "joint custody" arrangement became less and less satisfactory, and in August 1967 this proceeding was instituted by the defendant.

Mr. Brand filed his motion to modify the decree on August 23, 1967. The substance of this motion is that the parties are the parents of eight children under the age of 21 years, namely, Nancy, born May 2, 1948; Charlotte, born October 17, 1950; Phillip, born March 24, 1953; Richard (who is called Hank in the record), born May 21, 1954; Barbara, born February 7, 1956; David and Daniel, born February 3, 1960; and Martha, born July 28, 1962. The motion further sets out that the five eldest children are in the custody of their father, and the three youngest are in custody of their mother. The motion then alleges that there has been a substantial change of conditions since the entry of the decree of divorce, primarily in three respects: 1) that the plaintiff (Mrs. Brand) "is associating with a man whose character is such that it has an unwholesome effect on the children;" 2) that the plaintiff has refused defendant permission to visit the children who are in her custody; and 3) that plaintiff displays a lack of interest in and affection for those children who are in defendant's custody. The plaintiff promptly filed a cross-motion, admitting in substance the terms of the decree of divorce and the accuracy of the defendant's allegations concerning the present custody of the children. The plaintiff's motion further alleges that: 1) the defendant has displayed a "bitter and uncompromising attitude" toward plaintiff "concerning the

children," and refuses to discuss their welfare and best interests; 2) that the defendant has attempted to alienate the children from their mother; 3) that a major part of defendant's time is devoted to business interests and that as a consequence, he cannot and does not care properly for the children. Both parties asked for the absolute care, custody and control of all the children, and plaintiff's motion prayed for an increase in amount of child support allowed.

At the hearing, Mr. Brand testified that he was a deputy sheriff in Jasper County. He also served as bailiff for Division Two of the Jasper County Circuit Court. Mr. Brand earns $325 per month, gross, from his office. He also operates a "water business," i. e., he hauls water for rural customers whose wells are not adequate for modern plumbing, and he manages or operates two farms, one of them a 160-acre farm and the other a 120-acre farm. From all sources, Mr. Brand's yearly income is "a little over $6,000.00." He and his family live in a four-bedroom house on 7½ acres, 4½ miles west of Jasper, Missouri. Mr. Brand is able, on his income, to provide all the necessities, and "some little extra," but the family is "always short on money." At trial time, the defendant was paying $100 a month as child support for the youngest three children.

Mrs. Brand, as indicated, was living in a rented house in Carthage. She stated that she had no income except the $100 monthly payment she receives from the defendant, but several years ago, she inherited some money, and has been living on that. We are not entirely clear as to the extent of Mrs. Brand's education; the record indicates that she has been attending college sporadically for several years, but Mrs. Brand also spoke of a "first" college education, and stated that she was qualified to "teach." At trial time, Mrs. Brand was not employed, but was "slowly building up" a dressmaking business.

While we mean no criticism of the presentation of either party's proof, and while the evidence in this kind of case necessarily takes a wide range, the record before us is remarkably indefinite and diffuse, and we shall not recite all the evidence in detail. The defendant's principal complaint has to do with Mrs. Brand's association with a man named Leslie Baker. Mr. Baker's daughter, a Mrs. Trease, testified as a witness for the defendant; her testimony was that her father had a violent temper, was mentally unstable and was cruel to his family, particularly to his wife. It developed, however, that Mrs. Trease had not lived with her father for nine years, and that she had not seen him for two years. The plaintiff produced witnesses, equally as credible as Mrs. Trease, who described Mr. Baker as a decent, courteous man and a "pretty good old Joe." Mrs. Brand's testimony was that she had become acquainted with Mr. Baker after she was baptized in the Church of Christ. She "spent time" with Mr. Baker, she testified, primarily because they were both interested in religion. As Mrs. Brand put it, " * * * we discuss the [B]ible mostly. We spend most of our time away from home at church and we do spend weekends, or, time, not weekends, time at the lake. We both enjoy fishing. We take the three little ones fishing with us; they enjoy fishing." There is some evidence from Mr. Brand and one of the Brand children which indicates that Mr. Baker may have spoken sharply to one or another of the children while they were visiting their mother but there is nothing whatever in the record which substantiates Mr. Brand's (and counsel's) innuendo that Mr. Baker is in fact Mrs. Brand's mentally unstable paramour.

The rest of the evidence adduced in support of the respective motions is equally vague. The defendant's point of view was that Mrs. Brand had neglected the children's health. There was a good deal of testimony concerning the recurrent ear infections which Richard—who is called "Hank"—had had for a number of years. Defendant's evidence was that Mrs. Brand had neglected to instill Hank's ear drops

regularly, and had allowed him to go swimming when he should not have done so. Plaintiff's evidence was that Hank's ear infections cleared up rapidly after a shot of antibiotic and that he had not swum in the pond, but had merely waded around the edge. There was also testimony concerning an infestation of pinworms from which the youngest child, Martha Lou, had suffered at one time. Defendant's evidence was that Mrs. Brand had neglected giving the child her medicine; plaintiff's evidence was that the prescribed medication caused very unpleasant side-effects and that she had been told by a physician that the infestation would probably clear up without the unpleasant medicine. Several of the older children testified that they would rather live with their father than with their mother. In substance, their testimony was that Mr. Brand is a more permissive parent, and that he demonstrates his affection and concern for his children more openly than does the plaintiff. At the same time, it appears that the plaintiff has continued to perform many services for her children; she made the dress which one of them wore to testify—for the defendant—at the hearing on these motions. The children appear to have been welcome in the plaintiff's home at any time. Many other such matters were developed in evidence but it cannot fairly be said that either parent was shown to be an unfit or unsuitable custodian of the children.

At the conclusion of the trial the case was taken under advisement, and shortly thereafter the trial court entered a rather elaborate decree which awards general custody of all the children to the defendant, reserving to the plaintiff the right to visit the children at reasonable times. The decree gives plaintiff the custody of three of the older children from Friday evening until Sunday evening the first weekend of each month, and further grants her custody of the three youngest children from Friday evening until Sunday evening on the third weekend of each month, and plaintiff is further granted the custody of the six youngest children for four weeks during the summer school vacation, "either all at the same time or in groups." The decree further provides that the two eldest children, who were 19 and 17 at trial time, may visit their mother at such times as they desire.

On this appeal, the plaintiff has argued the effect of the evidence at some length, maintaining that the defendant made no proof of any change of conditions occurring since the entry of the original decree which would justify or require that the children be put in his custody. While it is well established that a party seeking to modify the child custody provisions of a divorce decree must show that there has been a material change of circumstances which requires modification in the best interests of the child or children, J——— G——— W——— v. J——— L——— S———, Mo.App., 414 S.W.2d 352, 354[1]; Kimble v. Kimble, Mo.App., 399 S.W.2d 630, 633[3]; Wood v. Wood, Mo.App., 378 S.W.2d 237, 239[3], that rule—or requirement—cannot be realistically applied in this case. The decree of divorce recites that the court heard evidence, and doubtless it did, but the record before us plainly shows that the "joint custody" provision was a matter of stipulation and agreement between the parties, rather than an adjudication upon contested facts. Both plaintiff and defendant so testified, without objection, upon the hearing of these motions. For present purposes, it is unnecessary to consider whether the original decree is in fact definite and specific enough to be considered as an award of custody, see Schumm v. Schumm, Mo.App., 223 S.W.2d 122, 125–126, it is sufficient to say that in our view, the order appealed from must be considered as an original adjudication of custody, rather than a modification. As such, the validity of the order is not dependent upon a showing of changed circumstances. See Crooks v. Crooks, Mo.App., 197 S.W.2d 678, 681–682[2] [3–5] [6,7]; In re Krauthoff, 191

**754**

Mo.App. 149, 167–169, 177 S.W. 1112, 1119[3, 4].

The bald fact is that in this case, there was no evidence that either parent was unable or unfit to care for the children, and the trial court was obliged to make an award of general custody to one parent or the other, as the best interests of the children seemed to require. § 452.120, RSMo (1959) V.A.M.S.; Sanders v. Sanders, 223 Mo.App. 834, 839, 14 S.W.2d 458, 460[7]; Sabourin v. Sabourin, Mo.App., 213 S.W. 490, 493. Of course, as the plaintiff argues, there are factors which mitigate against the award of custody which was actually made. The plaintiff invokes the often repeated rule that the interest of a very young child is usually best served by being in its mother's custody, provided she is able to care for the child, and provided her character and conduct is such that she is a suitable custodian, R ____ v. E____, Mo. App., 364 S.W.2d 821, 829[6]; Edwards v. Edwards, Mo.App., 302 S.W.2d 37, 39[2], and the further principle that children should be placed with a parent or custodian who can give them his or her undivided attention, rather than leaving them in the care of strangers or relatives while attending to business. Sartin v. Sartin, Mo.App., 349 S.W.2d 705, 711[8]; 2 Nelson, Divorce and Annulment, § 15.11, p. 237 (Rev.ed.1961). Plaintiff maintains that in the defendant's home the supervision of the younger children will necessarily be entrusted to the older children because the defendant is obliged to spend most of his time working at various jobs to make ends meet, and in general argues that the children would be better supervised in her home than in the defendant's. We dare say it is true that in the defendant's home some of the day-to-day care and supervision of the younger children will be left to the older ones, but that is probably the case in any very large family, and the children who are presently with the defendant appear, even to the plaintiff, to be "quite normally healthy." Further, this is not a case in which the trial court could choose

between a parent able to give the children her undivided attention and another who would be forced to leave them with others while attending to business. What Mrs. Brand had in mind, if she obtained custody of all the children, was a working arrangement similar to that which obtains at the defendant's residence, where, as he said, " * * * we all * * * pitch in and do the work." Plaintiff's evidence was that while her quarters were adequate to house all the children, she realized she could not support them "on the amount of money * * * Mr. Brand could give me, but with the older children, with the older girl, for instance, at home, I might perhaps be able to get work at night, as the oldest daughter who is now in charge of the household is doing."

There are other factors which abstractly, at least, weigh in favor of the judgment rendered, but it would serve no useful purpose to discuss the evidence in detail or to note the dilemma inherent in this kind of case. The custody provision of the original decree was so indefinite, if indeed it could be considered as an award of custody, that it was almost certain to provoke controversy. The parties had experimented with divided or alternating custody, and had found it profoundly unsatisfactory. In the circumstances, the trial court was obliged to make a choice. There is no evidence, as there was in Graves v. Wooden, Mo.App., 291 S.W.2d 665, 669[5], that either of the parties had so offended good morals as to be an improper custodian, nor is there any indication that the children would be subject to substantial immoral or debasing influences in either home, as was the case in Yount v. Yount, Mo.App., 366 S.W.2d 744, 749[8], and it cannot be said that the atmosphere and surroundings in one home are markedly superior to those existing in the other as was true, for example, in Oliver v. Oliver, Mo. App., 325 S.W.2d 33. In short, the evidence does not preponderate in favor of either party, the trial court is vested with broad discretion in a matter of this kind,

Dupree v. Dupree, Mo.App., 357 S.W.2d 241, 242–243 [1]; Ramos v. Ramos, Mo. App., 232 S.W.2d 188, 198–199 [11], and we cannot confidently say that some other disposition of the custody of the children would better have served their interests.

As a final point, the plaintiff contends that the attorney's fee allowed was grossly inadequate. Here again the trial court's discretion is involved. Copenhaver v. Copenhaver, Mo.App., 402 S.W.2d 612, 615, and considering the defendant's financial circumstances, we cannot say that the amount allowed—$150—was grossly inadequate as to indicate an abuse of discretion.

For the reasons indicated, the judgment is affirmed.

STONE and TITUS, JJ., concur.