**Evan Wade REPLOGLE, Respondent,**

v.

**Tammy Sue REPLOGLE, Appellant.**

No. WD 49965.

Missouri Court of Appeals,
Western District.

April 25, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 30, 1995.

James J. Wheeler, Keytesville, for appellant.

David A. Masters, Macon, for respondent.

Before KENNEDY, P.J. and SMART and LAURA DENVIR STITH, JJ.

SMART, Judge.

Tammy Sue Replogle appeals from a decree dissolving her marriage to Evan Wade Replogle. She contends that the trial court erred by: (1) splitting custody of the parties' minor children because there was no exceptional circumstance justifying the separation of siblings; (2) dividing marital property by not giving her a greater share and by setting aside a 90 acre farm to Evan as nonmarital property; and (3) failing to make a child support award to her as there is no justification for assuming that if both parents take a child it is unnecessary to figure child support. The judgment of the trial court is affirmed in part and reversed and remanded in part.

Tammy and Evan were married July 18, 1991. Two children were born of the marriage: Allen Wade Replogle, born September 26, 1991 and Amy Sue Replogle, born October 25, 1993. The parties separated on June 29, 1993, a few months before Amy was born. Evan has lived his entire life upon a farm except for a few brief periods of time. He farms for a living, working on his father's farm and on his own farm. Evan had planned to raise his children on a farm and Tammy knew about his plan at the time of the marriage. Tammy was employed outside the home as a line worker at Toastmasters.

The evidence is viewed on appeal in a light favorable to the trial court decision. Evan developed a close relationship with Jamie, Tammy's son from a previous relationship. Evan testified that he also cared for his own son, Allen. Evan testified that Tammy looked to him to take care of the children and that she "[y]elled and screamed at them all of the time." Evan said he thought that he and Tammy had a pretty good relationship but that she began to pull away from him and resented being alone because he was working all of the time.

On June 29, 1993, Tammy told Evan that she was leaving him. Evan called his parents and asked them to come over. Tammy told Allen that Evan did not love him and told Evan that Allen was not his son. She also told Evan that he was not the father of the baby she was carrying. (Blood tests later confirmed that Evan was the father of both children.) Evan reassured Allen, picked him up, placed him in his truck and attempted to drive away. Tammy tried to prevent this, but eventually backed away from the truck and left the farm. Evan's parents, who were present that evening, testified they did not witness any abuse of Tammy by Evan. The following day, Tammy obtained an *ex parte* order by claiming that Evan had torn Allen from her arms and had pushed and hit her. Tammy gained custody of Allen. The *ex parte* application was then dropped.

Evan had visitation with Allen during the weekend of Amy's birth. Tammy did not want Evan to care for Allen and threatened him with prosecution unless Allen was turned over to Tammy's sister. Evan offered to care for Allen while Tammy was recovering from Amy's birth but Tammy refused his offer. Tammy refused to allow Evan any

further visitation unless he paid child support. Evan attempted to visit Allen but was consistently turned away. He finally obtained a court order in December, 1993. Tammy was upset when he went to pick Allen up, screaming and calling him names. She also screamed at the police officer whom Evan had arranged to accompany him. Tammy would not let Jamie visit with Evan despite the boy's attachment to Evan. She also testified that she felt that Evan's visitation with Amy should be supervised.

There was testimony that Evan provides for Allen's needs during their time together. John Young, a witness who had observed Evan and Allen's times together, describes the two as being "pretty much inseparable." Mr. Young described the affection between father and son. He testified that Evan desired to raise his children and that Evan gets support from his family. Mr. Young's wife, Fawn, testified that Evan took care of Allen and that there was a strong bond between them.

At trial, Tammy attempted to portray Evan as an abusive man who smoked marijuana in front of the children. Tammy's witnesses included Franklin Nute, her current boyfriend. Evan admitted trying marijuana in high school, but denied using drugs while he lived with Tammy.

The trial court, upon consideration of the factors set forth in § 452.375, RSMo 1994 [1], split the physical custody of the children, finding that it would be in the best interest of Allen to be in his father's care, and that it would be in the best interest of Amy to be in her mother's care. Tammy and Evan were given joint legal custody of the children and a detailed visitation schedule was set out providing that the children would be together on weekends, holidays and during the summer. The court found that it would be in the best interests of the minor children that neither Tammy nor Evan pay child support.

The trial court set off the parties' separate property and divided the marital property and debt. It further ordered Tammy to pay for the blood tests proving that Evan was the father of Amy because of her conduct in denying paternity. The court also ordered that Evan pay Tammy $1,200.00 as her share of the marital contribution to Evan's separate property.

### Split Custody

Tammy contends that the trial court erred in splitting the custody of Allen and Amy because there was no rational basis for such a split and that the best interests of the children would best be served by placing them both with her. Review of this court tried case is governed by the principles set out in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The trial court's decision must be affirmed unless there is no substantial evidence to support it; it is against the weight of the evidence; or it erroneously declares or applies the law. *Id.; O'Leary v. Stevenson*, 782 S.W.2d 109, 111 (Mo.App. 1989).

There exists no absolute rule to follow when determining what the outcome of a custody case should be; each case must be examined in light of its own unique set of facts. *Fastnacht v. Fastnacht*, 616 S.W.2d 98, 100–01 (Mo.App.1981). The trial court has broad discretion in making provision for child custody and this court will not interfere with the trial court's decree unless the welfare of the children compels such interference. *Jobe v. Jobe*, 708 S.W.2d 322, 328 (Mo.App.1986). "Moreover, because of the trial court's unique position for determining the credibility, sincerity, character, and other intangibles of the witnesses, we presume awards of custody are made in the best interests of the children." *Gismegian v. Gismegian*, 849 S.W.2d 201, 202 (Mo.App.1993). A trial court's determination of custody is given greater deference than that given the trial court in any other type of case. *D.S.P. v. R.E.P.*, 800 S.W.2d 766, 770 (Mo.App.1990).

Absent unusual circumstances, siblings should not be separated upon divorce. *Law v. Law*, 833 S.W.2d 17, 19 (Mo.App. 1992).[2] However, the trial court has the

---

1. All sectional references are to Missouri Revised Statutes 1994, unless otherwise indicated.

2. *See also D.S.P. v. R.E.P.*, 800 S.W.2d 766 (Mo. App.1990); *Jobe v. Jobe*, 708 S.W.2d 322 (Mo. App.1986); *O'Leary v. Stevenson*, 782 S.W.2d 109

authority to order separate custody if it is in the best interest of the children to do so. *In re Marriage of Newberry*, 745 S.W.2d 796, 797 (Mo.App.1988). We find no error in the trial court's determination of custody in the instant case.

At the end of the trial, the court stated: It's all over the custody and visitation of these children. And you can fashion that better than I can. But if you do not, I will. And I might say to both of you, the Court's present impression will not follow what is normally done. I think we've got some real unique and different circumstances here.

The trial court's order reflected the perception that the case involved "unique and different circumstances" as it split physical custody of the children, awarding custody of Allen to Evan and awarding custody of Amy to Tammy. The court specifically stated that it considered the evidence in light of the factors set out in § 452.375. This was the proper procedure for the court to follow. Section 452.375.2 provides:

The court shall determine custody in accordance with the best interests of the child. The court shall consider all relevant factors including:

(1) The wishes of the child's parents as to his custody;

(2) The wishes of a child as to his custodian;

(3) The interaction and interrelationship of the child with his parents, his siblings, and any other person who may significantly affect the child's best interests;

(4) The child's adjustment to his home, school, and community;

(5) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm;

(6) The needs of the child for a continuing relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(7) The intention of either parent to relocate his residence outside the state; and

(8) Which parent is more likely to allow the child frequent and meaningful contact with the other parent.

Consideration of the evidence under these standards supports the trial court's decision. Both Evan and Tammy wanted custody of the children. Allen and Amy were both too young at the time of the trial to express a preference. The evidence did show, however, the close bond that existed between Evan and Allen and the support given by Evan's family. On the other hand, Evan did not have contact with his daughter Amy. Tammy showed a reluctance to allow Evan to spend time with the children and, because of her claim about Amy's parentage, Evan was uncertain that Amy was his daughter until the blood tests later established parentage. Tammy was, in effect, the only parent that Amy had had contact with at the time of the trial. The trial court ordered liberal visitation, insuring that the children spend a great deal of time together. Both parents live in the same community.

■ The court did not find a history of abuse despite Tammy's continuing efforts to brand Evan an abuser. The trial court is the best position to judge credibility. The trial court was free to disbelieve Tammy's depiction of Evan as an abusive, pot-smoking individual. The evidence tends to show that Evan is more likely than Tammy to foster a continuing relationship between the children and the other parent. Tammy has interfered with Evan's visitation in the past. She denied Evan's paternity of Allen and her un-

(Mo.App.1989); *Long v. Long*, 771 S.W.2d 837 (Mo.App.1989); *Vaught v. Vaught*, 755 S.W.2d 375 (Mo.App.1988); *Griggs v. Griggs*, 707 S.W.2d

488 (Mo.App.1986); *Whiteside v. Whiteside*, 696 S.W.2d 871 (Mo.App.1985).

born child in Allen's presence. There is ample evidence to support the trial court's determination that Evan should be awarded physical custody of Allen, and, in view of the fact that Amy does not know Evan as well as Tammy, that Tammy be awarded physical custody of Amy.

■ Tammy claims that there had to be a rational basis to change Allen's custody to Evan stating that "[t]he underlying general rule is that if you have custody and are getting along well, there is no reason to upset a working relationship." No citation is given to this proposition which confuses the present action with a motion to modify. The trial court's docket sheet shows that the parties stipulated to temporary orders on December 10, 1993. This was not a full hearing on the merits and there was no need to demonstrate a change in circumstances to the trial court before it awarded physical custody of Allen to Evan. *See D.K.L. v. L.C.L.,* 764 S.W.2d 664, 666 (Mo.App.1988). Point I is denied.

### *Division of Property*

■ Tammy's next contention is that the trial court erred in dividing the marital property and in setting aside a 90 acre farm to Evan as his nonmarital property. She maintains that she should have received a greater share of the marital property because Evan was guilty of marital misconduct.

■ Section 452.330 states that "the court shall set apart to each spouse his nonmarital property and shall divide the marital property in such proportions as the court deems just after considering all relevant factors...." The five factors enumerated in § 452.330 that the court is directed to consider are: (1) the economic circumstances of each spouse; (2) the contribution of each spouse to the procurement of the marital property; (3) the set-off of nonmarital property; (4) the parties' conduct during the marriage; and (5) the custodial arrangements for minor children. The trial court is vested with broad discretion in its division of marital property. *Sinclair v. Sinclair,* 837 S.W.2d 355, 359 (Mo.App.1992). The division need not be equal but must be just. *Hernandez v. Hernandez,* 872 S.W.2d 161, 166 (Mo.App.

1994). This court will interfere only where the division is so unduly favorable to one party that it constitutes an abuse of discretion. *Ludlow v. Ahrens,* 812 S.W.2d 245, 249 (Mo.App.1991). We presume that the trial court's division is correct and the party challenging it bears the burden of overcoming that presumption. *Knapp v. Knapp,* 874 S.W.2d 520, 524 (Mo.App.1994). Tammy has not met her burden. We find no abuse of discretion in the instant case. The trial court's division of marital property gave nearly equal amounts of property to each party. Tammy, in fact, received slightly more property than did Evan. The trial court was not obliged to believe Tammy's allegations of marital misconduct.

■ Nor did the trial court err in setting off the 90 acre farm to Evan as his nonmarital property. The farm was titled in Evan's name and acquired by Evan before the marriage. As a general rule, property acquired before marriage is separate property where it remains titled in the name of the original owner and where the record does not show an intention to change the status of the property from separate to marital. *Stottlemyre v. Stottlemyre,* 877 S.W.2d 176 (Mo.App. 1994). The record yields no evidence that Evan intended to convert the house from his separate property to marital property. The contribution that Tammy made to Evan's acquisition of his separate property was taken into account by the trial court. Evan was ordered by the court to pay $1,200.00 to Tammy as her share of the marital contribution to Evan's separate property. Point II is denied.

### *Child Support*

■ Tammy's final contention is that the trial court erred in not making Evan pay child support as there is no justification in assuming that since both parents have custody of a child that it is unnecessary for the court to figure the appropriate support. The trial court ordered that neither party was to pay child support, finding that "[i]t is in the best interests of the parties minor children that neither party pay any sum as and for

child support as both parties will be fully supporting one child."

 Section 452.340.7 mandates the use of child support guidelines in determining the amount of that support.[3] These guidelines are mandatory in all child support cases. *Sinclair v. Sinclair,* 837 S.W.2d at 358. A Form 14 must be completed and made part of the record even in split custody cases. *Id.; Stewart v. Stewart,* 866 S.W.2d 154, 158 (Mo.App.1993). Although the record suggests that Form 14's were prepared by counsel, no Form 14 appears in the record. The cause must thus be remanded to the trial court for a specific determination of the Form 14 calculation. It would be inappropriate for this court to make the required calculations. The record is not sufficiently developed to make calculation of Form 14 possible. Furthermore, the trial court possesses the power to review the support figure calculated by using Form 14 and make findings concerning whether the figure is unjust or inappropriate.

The judgment of the trial court is affirmed as to the issues of custody and division of property. The judgment is reversed as to the award of child support and remanded to the trial court with instructions to make Form 14 calculations pursuant to Rule 88.01, and to receive additional evidence, if necessary, to determine the correct figures for calculating Form 14. The court is then to consider the Form 14 calculation and award the amount so determined, or to make specific findings as to the injustice or inappropriateness of such award and to make such

other award as the court believes is warranted by the evidence in this case.

All concur.

---

**3.** Rule 88.01 provides:
> When determining the amount of child support to order, a court or administrative agency shall consider all relevant factors, including:
> (a) the financial resources and needs of the child;
> (b) the financial resources and needs of the parents;
> (c) the standard of living the child would have enjoyed had the marriage not been dissolved;
> (d) the physical and emotional condition of the child; and
> (e) the educational needs of the child.
> There *is a rebuttable presumption that the* amount of child support calculated pursuant to Civil Procedure Form No. 14 is the amount of child support to be awarded in any judicial or administrative proceeding for dissolution of marriage, *legal separation, or child support.* **It is sufficient in a particular case to rebut the presumption that the amount of child support calculated pursuant to Civil Procedure Form No. 14 is correct if the court or administrative agency enters in the case a written finding or a specific finding on the record that the amount so calculated, after consideration of all relevant factors, is unjust or inappropriate.** (Emphasis added).