**Leland Ray HORTON, Respondent,**

v.

**Linda Sue HORTON, Appellant.**

**No. WD 53958.**

Missouri Court of Appeals, Western District.

Submitted July 10, 1997.

Decided Dec. 2, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 3, 1998.

Allan B. Turner, Chillicothe, for appellant.

Dana J. Macoubrie, Chillicothe, for respondent.

Before SMART, P.J., and LOWENSTEIN and LAURA DENVIR STITH, JJ.

SMART, Presiding Judge.

Linda Sue Horton appeals from a decree dissolving her marriage to Leland Ray Horton She contends that the trial court erred in awarding primary physical custody of the parties' child to Leland Horton She also contends the court erred in denying her motion that Leland Horton pay her attorneys' fees. The judgment of the trial court is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

Linda Sue Horton ("Mother") and Leland Ray Horton ("Father") were married December 24, 1981. The only child of the marriage, Kelly Rae Horton, was born November 24, 1986. Mother and Father separated on April 18, 1996. Mother moved out of the marital home, where the family had lived since 1993, taking Kelly with her. Both Father and

Mother sought custody of Kelly in the subsequent dissolution proceeding. At the time of the dissolution, both Mother and Father were employed. Father was a self-employed auto mechanic. Mother worked as a human resources clerk at Wire Rope Corporation.

The evidence at trial indicated that both Mother and Father were conscientious, capable parents. Among the items mentioned by Father in his request for primary physical custody was a suggestion that he should receive primary physical custody because the marital home (which he was to receive under the property settlement) was the one that Kelly had lived in for the three years prior to the separation.

The trial court awarded joint legal custody of Kelly to Mother and Father. Primary physical custody was awarded to Father. The trial court stated that it found both parents "totally satisfactory." The court noted that the mother separated from the family home without explanation.

> The court adopts the proposition that if one parent departs the family home for unexplained reasons, *all other things being equal,* the nondeparting parent should have custody of the child. To do otherwise would require the court to resort to very subtle and necessarily subjective distinctions. Second, the child's life will be disturbed by the breakup of the marriage but she will be least disturbed by remaining in the family home, which both sides agree the father is to receive. Third, the mother suggests, by virtue of her proposed decree that she may change her residence from this community. While this is not a pivotal consideration, it does deserve some consideration. The father has an established business and has lived in the community during the entire life of the child. The child has attended school in this community all of her life. Again, it would be least disturbing to the child if she could continue her schooling in a familiar school and have

the companionship and comfort of her friends.

The trial court did not award Mother attorneys' fees. Mother appeals the trial court's award of custody to Father and refusal to award her attorneys' fees.

## CUSTODY

Mother claims that the trial court erred in awarding Father primary physical custody of Kelly. Mother contends that the trial court's judgment was against the weight of the evidence, was based on a misapplication of the facts and the law, and was not in the best interest of the minor child. Mother contends that there was no evidence that her decision to take Kelly with her when she left the marital home was not agreed to by the parties. She also contends that there was no evidence that her living arrangements were not suitable or that Kelly was not well-adjusted at both home and school. She further claims that there is no evidentiary support for the trial court's decision.

 There is no one rule that can be applied to determine the outcome of a custody case. *Replogle v. Replogle,* 903 S.W.2d 551, 554 (Mo.App.1995). Every case has its own distinctive features and must be reviewed in light of its own unique set of facts. *Id.* Review of this court tried case is governed by *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). We must affirm the decision of the trial court unless it is against the weight of the evidence, there is no substantial evidence to support it, or it erroneously declares or applies the law. *Id.* Although we are guided by the standards of *Murphy v. Carron* in reviewing court-tried cases, it is also true that we give greater deference to the trial court's decision in child custody decisions than in other matters. *Leone v. Leone,* 917 S.W.2d 608, 613 (Mo. App.1996). Section 452.375.2, RSMo 1994 [1] directs that the trial court determine custody of the child considering all relevant factors, including those listed in that section.[2]

---

1. All statutory references are to Revised Statutes of Missouri 1994, unless otherwise indicated.

2. The factors listed in § 452.375.2 are:
 (1) The wishes of the child's parents as to his custody; (2) The wishes of a child as to his

custodian; (3) The interaction and interrelationship of the child with his parents, his siblings, and any other person who may significantly affect the child's best interests; (4) The child's adjustment to his home, school, and community; (5) The mental and physical

The undisputed evidence before the court below was that both parents were well qualified to serve as primary physical custodians of Kelly. The parents did not seek joint physical custody, but instead each parent sought primary physical custody. The trial court made a decision between two parents he saw as well-qualified.

The greater deference we give to trial courts in custody decisions is especially appropriate where the evidence in the record does not preponderate in favor of either party as custodian. In such cases, the reviewing courts have been very reluctant to reverse the trial court. *See Gulley v. Gulley*, 852 S.W.2d 874, 876 (Mo.App.1993); *In re Marriage of Shepherd*, 588 S.W.2d 174, 176–77 (Mo.App.1979); *Brand v. Brand*, 441 S.W.2d 750, 754–55 (Mo.App.1969). Here, there is no dispute that both parents were satisfactory as custodians.

■ Mother argues that, in view of the fact that all other things were equal, the trial court erred by awarding primary physical custody to Father, because Mother had custody during the separation, and there was no evidence that Mother performed unsatisfactorily as Kelly's custodian during the separation. In effect, Mother would have us create a presumption in favor of the parent who had actual physical custody during the separation.

As support, Mother cites *Wakili v. Wakili*, 918 S.W.2d 332 (Mo.App.1996), and *Nowels v. Nowels*, 637 S.W.2d 163 (Mo.App.1982), two decisions affirming awards of custody to parents who had enjoyed custody during separation. In both cases, the appellants argued that the custody orders were not supported by substantial evidence.[3] In both cases, the court held that evidence that the physical custodians during separation had been entirely satisfactory was substantial evidence supporting custody awards to those parents. *Wakili*, 918 S.W.2d at 343; *Nowels*, 637 S.W.2d at 165. Neither case establishes any type of presumption in favor of the prior custodial parent. If anything, these cases simply confirm the rule that an appellate court will not disturb an award of custody unless the record shows that the child's welfare requires a different disposition.[4]

While we agree that the fitness of the parent who was custodian during separation is one of many relevant factors in a determination of custody during a dissolution proceeding, there is no presumption in favor of

---

health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm; (6) The needs of the child for a continuing relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child; (7) The intention of either parent to relocate his residence outside the state; and (8) Which parent is more likely to allow the child frequent and meaningful contact with the other parent.

3. In *Wakili*, the appellant claimed that the trial court erred in not awarding joint legal custody. 918 S.W.2d at 343. The evidence clearly showed that the parents were hostile to each other, precluding any award of joint legal custody. *Id.* In *Nowels*, the mother argued that, all other things being equal, the trial court should have applied the "tender years presumption" (later abolished

by Section 452.375.6) to break the tie and award her custody of the children, who were 7 and 9 years old at the time of dissolution. 637 S.W.2d at 165. The court rejected this argument, reasoning that the presumption had been rebutted by the record, which showed that the mother would be absent from the home as much as the father on account of work. *Id.* At best, the court observed, the wife had a claim to custody equal to that of the father, and since the court's award to the father was supported by substantial evidence, the best interests of the child did not demand a different disposition. *Id.*

4. The *Nowels* case is of no value to appellant, because there the appellant lost even though the court assumed arguendo that the record showed that both parents were equally fit. 637 S.W.2d at 165. The court rejected the appellant-mother's argument that the trial court should have used the "tender years presumption" to tip the balance, and affirmed the award to father simply because there was substantial evidence to support it. *Id.* The only essential difference between *Nowels* and the instant case is that the trial court in *Nowels* apparently did not explain the reasons for its choice in writing.

the prior custodial parent. To recognize such a presumption would be tantamount to treating an award of custody in dissolution as a "modification" of a prior court order entered after a full hearing on the merits. This is precisely what we refused to do in *Replogle v. Replogle*, 903 S.W.2d 551, 556 (Mo.App. 1995).

In *Replogle*, the appellant made much the same argument as Mother makes in the present case, contending "[t]he underlying general rule is that if you have custody and are getting along well, there is no reason to upset a working relationship." *Id.* We rejected this proposition, pointing out that by requiring the noncustodial parent to demonstrate a change in circumstances, the appellant effectively had confused an initial custody award in a dissolution decree with a motion to modify. *Id.* We again refuse to create a presumption in favor of the prior custodial parent.

■ Mother alleges that the factors the trial court expressly mentioned in support of its custody award were irrelevant or unsupported by the evidence, and that the trial court's decision consequently lacked any factual or legal support. The trial court justified its decision to award Father primary custody on three grounds: (1) Mother had left the family home without offering an explanation; (2) both parents agreed that Father was to receive the marital home; and (3) Mother's proposed custody decree contemplated the possibility of her departure from the community in which Kelly had lived since birth.

However close a custody case is, it must be resolved according to relevant principles under the law. The fact that either custody award would be justified by the evidence should not protect an order that was the produced entirely by serendipity, individual caprice, or consideration of other irrelevant facts. At the same time, we do not wish to discourage trial courts from explaining in writing their custody orders, especially in close cases such as this. It is clear to us that this trial court took pains to break this tie by considering facts that it believed to be relevant to Kelly's best interests. That it had difficulty finding any such facts proves only that both parents were found well qualified to be Kelly's primary physical custodian.

In a custody case where all other relevant factors are equally balanced, the departure of one parent from the family home without any explanation will often be pertinent. It is not necessarily so in this case. In this case, Father and Mother mutually agreed prior to dissolution that Mother was to take temporary primary physical custody of Kelly and leave the marital home. We do not know the factors affecting that decision. At trial, Mother was not asked for an explanation as to her willingness to leave the home. The trial court did not give any indication that an explanation was expected. On these facts, it seems questionable to give much weight to the Mother's departure from the family home. At the same time, it must be acknowledged that the trial court did not give much weight to this factor, and considered it only because all other things were equal.

When the child has lived in the family home for some significant period of time prior to dissolution, award of the family home can be a relevant factor in an otherwise close custody case. The family home is a familiar point of reference for a child going through an unfamiliar and disturbing period of transition. It is not unusual for award of the marital home to go to the parent with primary physical custody, and the legislature has recognized that it is often beneficial to award the family home to the custodial parent. See § 452.330.1(1). While it is unusual for custody to follow the home, rather than vice versa, we cannot say that to consider the award of the home in this case was completely capricious. Kelly had lived in the marital home for the three years prior to the separation of her parents. The fact that the parties had agreed that the home was going to Father cannot be said to be completely immaterial in the context of a choice between two equally qualified parents.

■ The third factor mentioned by the trial court, one party's potential departure from the community, is pertinent as a general proposition. When a child has lived in a community for a significant period of time prior to dissolution, the court should consider

the fact that one of the parents seeking custody may leave that community. We cannot say, however, that in this case the trial court had a competent or substantial evidentiary basis for employing such a consideration. Although Mother concedes that she did propose a custody decree (never admitted into evidence) that made provision for her relocation outside of the community, there is no evidence in the record suggesting that Mother actually planned to leave the community. The proposed custody decree making provision for relocation may have been simply "boiler plate" language regularly employed by an attorney wishing to provide for all contingencies. Or, possibly, the judge had a basis for concluding that this language represented a hint that Mother may be more likely to leave. There was, however, nothing in the record directly supporting such a hint. The record does support the notion that, due to Father's established business in the community, the likelihood that he will leave the community seems quite small. As between the two parents, the trial court's recognition that the Father is unlikely to leave the community is not immaterial. The trial court essentially conceded that the suspicion that Mother may leave the community was a remote factor, considering the fact only for lack of much else that distinguished the parents.

Of the three factors the trial court expressly used to resolve this close case, the first was irrelevant, the second was relevant, and the third would have been relevant to this case had there been evidentiary support. The court's basic concern in considering these three factors was in trying to minimize the disruption of Kelly's life created by the dissolution of her parent's marriage. In this case, where both parents are equally satisfactory as custodians, the trial court's method was not so arbitrary and unreasonable as to shock our sense of justice and to indicate a lack of careful consideration. *Richardson v. State Highway & Transportaton Commission*, 863 S.W.2d at 881 (Mo.1993). Having read the trial court's memorandum in support of its custody award, we are left with the impression that the trial court gave the matter of Kelly's custody careful consideration. We conclude that the trial court did not abuse its discretion.

Reviewing courts are reluctant to reverse a custody award that is consistent with the best interests of the child. *In re Marriage of Shepherd*, 588 S.W.2d 174, 176–77 (Mo. App.1979). The trial court was in the best position to make this call. While we may not agree with all of the trial court's professed analysis, we cannot say that this is an award that must be reversed. There is no reason to believe that another trial, or further consideration by the trial court, would provide the trial court a better basis for favoring one parent over another as Kelly's primary physical custodian. The trial court's award of primary physical custody to Father is affirmed.

## ATTORNEYS' FEES

Mother claims that the trial court erred by failing to award attorneys' fees because, based upon the evidence presented at trial, Father had sufficient financial resources to pay such fees. At trial, Mother claimed that she had incurred $2,500.00 in attorneys' fees and requested that Father be ordered to reimburse her for these fees. The trial court did not so order.

■■■ Although as a general rule the parties in a dissolution action bear the expense of their own attorneys' fees, § 452.355 permits an award of attorneys' fees to a party. Section 452.355 provides, in pertinent part:

1. The court from time to time after considering all relevant factors including the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under sections 452.300 to 452.415 and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment. The court may order that the amount be paid directly to the attorney, who may enforce the order in his name.

Awards of attorneys' fees in a dissolution action are discretionary with the trial court. *Glenn v. Glenn*, 930 S.W.2d 519, 525 (Mo. App.1996). We will not disturb the trial court's judgment on the matter save for an

abuse of that discretion. *Id.* "To demonstrate an abuse of discretion, the complaining party bears the burden of showing the award to be clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." *Meservey v. Meservey,* 841 S.W.2d 240, 248 (Mo.App. 1992).

In this case, Mother fails to persuade us that the trial court abused its discretion in failing to award attorneys' fees to her. Both Father and Mother were employed at the time of the dissolution action. Moreover, the trial court made an equal division of the marital equity, awarding Wife a judgment against Husband for $27,231.29. Wife had sufficient funds to pay attorneys' fees. Point II is denied.

Judgment is affirmed.

LOWENSTEIN, J., concurs.

LAURA DENVIR STITH, J., dissents in separate opinion.

LAURA DENVIR STITH, Judge, dissenting.

I respectfully dissent from the portion of the majority's opinion which affirms the trial judge's decision to give primary physical custody of Kelly to Mr. Horton

I agree with the majority's statements that the trial court enjoys a great deal of discretion in making its determination regarding custody and that we will normally presume that the trial court considered all relevant factors in making its decision. In this case, however, the record before us affirmatively shows that the trial court abused its discretion by relying on improper factors in awarding primary physical custody of Kelly to Mr. Horton I would therefore remand the case to the trial court for reconsideration of its decision.

As noted by the majority, the trial court specifically found that both parents would be fit and proper custodians of Kelly, and the record fully supports that conclusion. It was for this very reason that the trial court had great difficulty in making a custody determination, for the judge clearly did not wish to deprive either parent of custody of their daughter. Ultimately, however, the judge had to make a custody determination, and awarded primary physical custody to Mr. Horton The judge gave three reasons for his decision: (1) that Mrs. Horton had moved out of the family home without explanation during the separation; (2) that both parents agreed that Mr. Horton would keep the family home; and (3) that Mrs. Horton was contemplating the possibility of moving from the community.

As the majority has noted, reasons (1) and (3) are simply not supported by the record. It shows that neither parent cared strongly who would live in the family home, and that they together agreed that Mrs. Horton would move out of the home *with Kelly* during the pendency of the proceeding. No negative inference can be drawn from these facts.

Similarly, the record shows absolutely no intent to move out of the community on the part of Mrs. Horton To the contrary, her attorney was simply very thorough in his preparation of the separation agreement and, so, included a provision which would govern should a party ever decide to move out of the area. The fact that the attorney showed such foresight should certainly not be held against his client in the ultimate custody decision.

The point of my disagreement with the majority is its analysis of the final factor relied on by the trial court, e.g., the fact that the father was awarded the residence when the marital property was divided. In listing this factor, the trial court basically held that the award of child custody should follow the award of the family home. Nothing in our laws or the principles governing child custody supports this result. To the contrary, and as the majority concedes, Section 452.330(1) states that the court shall consider "the desirability of *awarding the family home ... to the spouse having custody* of any children." § 452.330(1) (emphasis added). It turns this principle on its head to rule that the court should instead award custody to the spouse who received the family home. To do so puts the proverbial cart before the horse.

To allow custody to follow the award of the house, rather than vice versa, is particularly unfair on the facts of this case, for it is undisputed that the family had lived in the house for only three years, and both parents indicated that they did not care who got the house. The property had to be divided up somehow, however, and the parties ultimately agreed that the father, who was already living in the house, would retain it and the mother would get other property instead.

At the time they divided up the marital property, however, the court had not made a ruling on child custody, nor had it indicated that it would consider who had been awarded the house in deciding custody. Thus, there was no notice to either party that the choice of who would be awarded the house would have any significance in regard to custody. Certainly no prior case had held that the award of child custody would be governed by the property division, rather than the other way around.

Indeed, at the time of the division of property the parties' daughter was living with her mother in an apartment. She had, thus, already moved out of the house. It, therefore, was more disruptive of her living situation to order that she move back into the house with her father than it would have been to order her to remain in the custody of her mother in the apartment. This is particularly relevant in light of the principle, acknowledged by the majority, that evidence that the custodian during separation has been entirely satisfactory is a relevant, although not in itself dispositive, factor in favor of awarding that parent permanent custody.

I do not intend to suggest by this discussion that the trial court was required to award primary physical custody to the mother. I fully agree that both parents would be excellent custodians of their daughter. I do believe, however, that such an important issue should not be decided based on factors which are not supported by the record, or which are based on a misapplication of established principles. That is what I believe occurred here.

For these reasons, I would remand this case to the trial court so that it can reconsider its decision in light of the above discussion. In consideration of the time that has passed since its original decision, the court can, and should, hold an additional hearing at which it can take any relevant additional evidence affecting custody.

The court and the parties should also consider whether joint physical custody would be the proper option to follow where, as here, both parents get along and both would be excellent custodians of the child. While it appears that neither party suggested joint custody, the court is obligated to award custody in the best interests of the child. § 452.375(2)(5). Further, Section 452.375(5) specifically states that:

> Prior to awarding the appropriate custody arrangement in the best interests of the child, the court shall consider each of the following as follows:
>
> (1) Joint custody to both parents, which shall not be denied solely for the reason that one parent opposes a joint custody award;
>
> (2) Sole custody to either parent; or
>
> (3) Third party custody or visitation.

§ 452.375(5).

While it has been held that this section does not create a presumption in favor of joint custody, it does require consideration of this option. *Chapman v. Chapman*, 871 S.W.2d 123 (Mo.App.1994). Moreover, for the reasons thoroughly discussed by Judge Shangler in *Margolin v. Margolin*, 796 S.W.2d 38, 48–50 (Mo.App.1990), we have recognized that this statute creates a preference for joint legal custody in favor of parents such as Mr. and Mrs. Horton, who have shown an ability to share the rights and responsibilities of child-rearing. Other cases have applied this rationale to joint physical custody decisions. *See, e.g., Burkhart v. Burkhart*, 876 S.W.2d 675, 679–80 (Mo.App. 1994); *In re Marriage of Barnes*, 855 S.W.2d 451, 453–55 (Mo.App.1993). This option should have been, but was not, considered here.

For these reasons, I would remand with directions to the trial court to revisit the custody issue in light of relevant factors supported by the evidence, and in so doing to consider whether joint custody would be in

Kelly's best interests in this case. I therefore respectfully dissent from the majority's decision to affirm the judgment of the trial court.