Matthew James EDMISON, A Minor Child, By His Next Friend, Brian James EDMISON; and Brian James Edmison, Individually, Appellants,

v.

Betsy Robin CLARKE, Respondent.

No. WD 55733.

Missouri Court of Appeals, Western District.

March 31, 1999.

Stephen Charles Scott, Columbia, for appellants.

Douglas F. Pugh, Columbia, for respondent.

Before Chief Judge PATRICIA BRECKENRIDGE, Presiding Judge PAUL M. SPINDEN and Judge LAURA DENVIR STITH.

LAURA DENVIR STITH, Judge.

Brian James Edmison (hereinafter "Father") appeals the trial court's award of custody of Matthew James Edmison (hereinafter "Matthew") to his mother, Betsy Robin Clarke (hereinafter "Mother"), arguing the trial court erred by applying the wrong standard for an initial award of custody in that the court erroneously either applied the standard for a modification action or otherwise placed the burden on Father to show a change of circumstances in order to change custody from Mother to Father, without considering the other statutorily-mandated factors. He also argues the trial court erred by not granting a specific visitation schedule despite his request for one, and where the evidence showed that the absence of such a schedule effectively deprived him of meaningful visitation. We agree that the trial court erred in failing to consider all relevant factors in awarding custody and in failing to order a specific visitation schedule. Father also argues that the court erred in adopting Mother's Form 14 because it failed to include certain mandatory deductions, and that it erred in making the child support award retroactive to a date prior to the date Mother filed her Counter–Petition. We find both points meritorious. Reversed and remanded for further proceedings in accordance with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The testimony presented at trial revealed the following facts: ·

Father first came to Columbia, Missouri from Virginia to attend the University of Missouri. At the time of trial, he was no longer attending college and had been working for over three years as a sports reporter at the Columbia Tribune, earning approximately $20,200.00 annually. Mother and Father met while working on the campus newspaper and started dating and having sexual relations in October 1994. In early 1995, Mother was dating both Father and another man, Rehan Hyder, who lived in her dormitory. Eventually, Mother and Father dated exclusively and moved in together.

In March 1996, Mother discovered she was pregnant. After an initial shock, both Mother and Father accepted the pregnancy and both were very happy when Matthew was born on November 16, 1996 in Boone County, Missouri. From the time he was born until August 22, 1997, Matthew resided in Columbia, Missouri with both Mother and Father. Mother worked as a receptionist earning $14,400.00 annually. Mother and Father argued frequently, and Mother said she became concerned about raising Matthew in an argumentative environment.

Mother considered moving to Portland, Oregon in June 1997, but Father convinced her to stay. The situation apparently did not improve, and, on August 21, 1997, Father received an anonymous phone call telling him Mother still planned to move out. He confronted Mother with this information, but she denied she was planning to move out. In fact, however, she did move out and leave Columbia, taking Matthew with her, the next day, August 22, 1997. According to Father, Mother did not call him to tell him where she and Matthew were until almost a week after

they left. According to Mother, she called him the night she left or the very next night.

Father attempted to reestablish the relationship with Mother, but she was not interested. Mother moved into an apartment in Portland, Oregon with her old boyfriend, Rehan Hyder. Mother said her relationship with Mr. Hyder was initially platonic, but admitted that a romantic relationship later developed. At the time of the hearing below, Mother, Mr. Hyder and Matthew lived in a studio apartment in Portland. Matthew does not have his own room but does have his own bed. Mother currently works in the Portland area as a personnel consultant with an estimated annual salary of $30,000.00. Mother is originally from Macon, Missouri, and has family there.

Father filed a Petition for Declaration of Paternity and seeking custody on September 4, 1997. Mother filed a counter-Petition for custody on October 30, 1997. While these Petitions were pending, Mother and Father made arrangements for Father to have Matthew for one week after Thanksgiving in 1997 when Mother was back in Missouri for the holiday. Father assured Mother he had airplane tickets for himself and Matthew and that he would not try to keep Matthew because the legal process was already under way to resolve custody. Mother wanted Father to produce the plane tickets and sign some sort of affidavit, however. When Father did not do so, she refused to let him take Matthew. Angry at this turn of events, Father kicked down the door of Mother's parents house in Macon, resulting in property damage charges which Father has resolved and for which he has made restitution. Father flew to Portland as he had planned the weekend after Thanksgiving, where he was able to see Matthew for a few hours. However, this visit was the only time Father has been able to see Matthew.

From the time Mother left with Matthew, Father asked her to permit him to visit with Matthew. He has been permitted no other visits in Missouri or Oregon, although due to the costs of travel he has not attempted to visit Oregon often.

Father has continuously tried to maintain telephone contact with Matthew. At first, Father and Mother talked almost daily. As time went on, Mother failed to cooperate and the calls became less frequent. On one occasion, Mother apparently did not tell Father that Matthew had been sick until well after the fact, and Mother failed to send Father day care class photographs for which Father had sent Mother the money. Father testified that he is concerned that Matthew will forget who Father is because Mother is living with another man.

At the close of the hearing on the issue of custody, the court announced from the bench that both Mother and Father were the parents of Matthew,[1] and that both were suitable persons to have custody of Matthew; but that "it would not be in the best interests of [Matthew] to make a change in his custody at this time." (emphasis added). He therefore granted sole custody of Matthew to Mother. He adopted Mother's First Amended Form 14, pursuant to which he ordered that Father pay $551.00 per month in child support. He ordered the child support retroactive to August 12, 1997, which is the date Mother moved to Oregon. Counsel for Father requested the court to order a specific visitation schedule, but the court simply refused to set one, stating as his rationale that, while the request for a written visitation schedule was within the scope of Father's pleadings, "I'm just not going to do it in writing, Steve. Writing is hard for me. Writing is very difficult." In accordance with this statement, the court's handwritten docket entry did not set out a specific visitation schedule, but rather simply stated that Mother has legal and physical custody of Matthew subject to right of "reasonable visitation" of Father. Father appeals.

## II. STANDARD OF REVIEW

We will affirm a trial court's award of custody unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v.*

---

1. Although not married at the time of Matthew's birth, Father's status as Matthew's natural father was determined below and that determination is not contested on appeal.

*Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976); *Welker v. Welker,* 902 S.W.2d 865, 867 (Mo. App.1995). "The trial court has broad discretion in child custody matters, and we will affirm its decision unless we are firmly convinced that the welfare and best interests of the children requires otherwise." *Flathers v. Flathers,* 948 S.W.2d 463, 465 (Mo.App.1997), *citing Replogle v. Replogle,* 903 S.W.2d 551, 554 (Mo.App.1995).

## III. THE TRIAL COURT ABUSED ITS DISCRETION IN DETERMINING CUSTODY

■ Father argues that the trial court erred in awarding sole custody to Mother because the court applied the standard for a modification of custody rather than for an initial determination of custody as was sought here, or in any event improperly put the burden on him to show that a change of custody would be in the child's best interests, whereas in fact he bore no such burden and whereas the court should have considered all of the relevant statutory factors under Section 452.375.[2] Father bases this argument on the fact that, in awarding custody to Mother, the court made only the single finding that "[I]t would not be in the best interests of [Matthew] to make a *change in his custody* at this time." (emphasis added).

■ We agree with Father that a different standard is applied when making an initial custody determination than when determining whether to modify custody. In a modification proceeding, the court determines whether, based on facts that have arisen since or were unknown at the time of the prior decree, a substantial change has occurred in the circumstances of the child or the child's custodian. Once it determines that a substantial change of circumstances has occurred, then the court must consider whether, in light of this change of circumstances, a modification is necessary to serve the best interests of the child. § 452.410; *Baumgart v. Baumgart,* 944 S.W.2d 572, 575–76 (Mo.App.1997).

■ By contrast, the initial determination of custody is made based on consideration of the eight factors set out in Section 452.375, not based on who happens to have actual custody of the child from the time of separation until the judge makes the custody determination. Those eight factors are:

(1) The wishes of the child's parents as to his custody;

(2) The wishes of a child as to his custodian;

(3) The interaction and interrelationship of the child with his parents, his siblings, and any other person who may significantly affect the child's best interests;

(4) The child's adjustment to his home, school, and community;

(5) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and the parent or other family or household member who is the victim of domestic violence form any further harm;

(6) The needs of the child for a continuing relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(7) The intention of either parent to relocate his residence outside the state; and

(8) Which parent is more likely to allow the child frequent and meaningful contact with the other parent.

§ 452.375.2.

■ As Mother notes, the court below was not required to set out specifically which of these factors it relied on in awarding custody to Mother. Rather, where the court is silent as to which factors it considered, we will presume that the trial court considered all the evidence and made its award in the best interests of the child based on consideration of the relevant statutory factors, unless

---

2. All statutory references are to RSMo 1994 un-  less otherwise indicated.

the record indicates otherwise. *Flathers v. Flathers,* 948 S.W.2d at 471. This does not mean that the trial court's consideration of the evidence is completely unfettered, however. "While the trial court is accorded broad discretion and we must give great deference to its determination, its decision is still subject to appellate review." *In re Matter of Williams,* 672 S.W.2d 394, 396 (Mo.App. 1984). If we are convinced that the trial court abused its discretion in awarding custody, such as by failing to consider the relevant statutory factors in making its custody decision, we should remand so that the necessary determination can be made.

Here, the trial court was not entirely silent as to the basis on which the court placed custody of Matthew in Mother, and it is therefore not clear that the presumption that arises on a silent record applies. Rather than simply awarding custody to Mother, and rather than setting out how it applied the statutory factors, the trial court stated that it was giving Mother custody because "... [I]t would not be in the best interests of [Matthew] to make a **change in his custody** at this time," (emphasis added).

▮ Of course, whether a change of custody should be made is not one of the Section 452.375 factors set out above. If, by setting out only this factor, the court meant that the desire not to cause a change of custody, rather than consideration of Section 452.375, was the dispositive reason for its award of custody, then we agree with Father that this was error, for no presumption of a continued right to custody arises from the fact that one party has had custody during the pendency of the proceeding. Rather, as we noted in *Horton v. Horton,* 961 S.W.2d 67 (Mo.App.1997):

While we agree that the fitness of the parent who was custodian during separation is one of many relevant factors in a determination of custody during a dissolution proceeding, there is no presumption in favor of the prior custodial parent. To recognize such a presumption would be tantamount to treating an award of custody in dissolution as a "modification" of a prior court order entered after a full hearing on the merits.

*Id.* at 70–71. *Cf. Baumgart,* 944 S.W.2d at 576–77 (noting that, even in modification actions, it is the prior court order granting custody to a particular parent that is the key; no presumption arises from the mere fact of actual physical custody of the child).[3]

On the other hand, it is possible that the court simply intended to indicate its knowledge of the fact that the Mother was in actual physical custody of Matthew, and that this arrangement would not change under its decree. If the court's language is so interpreted, however, then we are left without any information as to whether or how the court considered the eight factors set out in Section 452.375 which it was required to consider in awarding custody.

In some cases, the record itself might make obvious how the eight factors set out in Section 452.375 must have been applied. Here, however, that is not the case. Factors 1, 2, 5 and 6 are equally favorable to both parties, for it is undisputed on the record that: (1) each parent wants custody; (2) Matthew is too young to have a preference as to a custodian; (5) there are not relevant mental health or domestic violence issues; and (6) both parents are willing to perform their functions and meet the needs of the child. Factors 3, 7 and 8 tend to favor Father, for (3) Matthew's interaction with

---

**3.** Although these cases involved dissolution proceedings, it is also well-settled that in a paternity case seeking an initial determination of custody, just as in a dissolution action in which an initial determination of custody is at issue, the trial court is not bound by the "substantial and continuing change of circumstances" standard applicable to modification actions. Rather, just as in initial dissolution actions in which child custody is involved, the basis for determining custody in a paternity and custody matter such as this one is the best interests and welfare of the child; that

basis is unaltered by the fact that the child was born out of wedlock. *Harris by Harris v. Harris,* 803 S.W.2d 167, 169 (Mo.App.1991). "Likewise, no preference may be given either parent for the sole reason that the parent is the mother or father of the child nor because of the child's age or sex." *citing* § 452.375.3. Rather, in determining the best interests of a child in making an award of custody, the court must consider the eight factors set out in Section 452.375, just as the court does in a custody determination in a dissolution action.

other family will be greater in Missouri, where his extended family lives, than in Portland, where he has no family; (7) Mother has relocated outside the state; and (8) Mother has not allowed Father any meaningful contact with Matthew since the separation, and indeed has permitted only a single visit. *See Dent v. Dent,* 965 S.W.2d 230 (Mo.App.1998) (holding the evidence of statutory factors concerning best interests of children required a reversal of trial court's grant of custody to Mother, in part, because evidence indicated Mother was unwilling to permit frequent and meaningful contact between father and children). Factor (4), Mathew's adjustment to home, school and community, would tend to favor Mother insofar as Mathew is now living with Mother in Portland, although his period of residence there was short at the time of the hearing, and the importance of this factor was further lessened by the fact that it was caused by his mother's unilateral move from his former and longer-term home in Columbia, Missouri.

In sum, many of these factors weigh in favor of giving custody to Father, although they would not preclude Mother from being considered an adequate custodian if proper safeguards were put into place to ensure that Mother's relocation outside the state and her past interference with Father's attempts at visitation would not continue to preclude Father from developing and continuing a meaningful relationship with Matthew. In the absence of such safeguards, however, it would be an abuse of discretion to give Mother custody on this record, for Missouri has a strong public policy favoring frequent and meaningful contact with both parents after the parents have separated and the best interests of the child are best served by continued relationships with both parents. § 452.375.2; *Hadfield v. Cannell,* 907 S.W.2d 283, 285 (Mo.App.1995). "In arranging custody, courts must determine the most likely course to assure this contact between the children and each parent. *Missouri courts presume that a child's frequent and meaningful communication with both parents is in the child's best interest."* *Dover v. Dover,* 930 S.W.2d 491, 496 (Mo.App.1996) (emphasis added). Removal from Missouri is one factor in determining the best interests of the child and, "it can be a decisive factor where the effect of the move will be to deprive the child of desirable contact with the noncustodial parent." *Tucker v. Tucker,* 778 S.W.2d 309, 312 (Mo.App.1989).

Unfortunately, the record does not provide us with any assurance that Father will be permitted to have a meaningful relationship with Matthew. To the contrary, rather than providing for a detailed visitation schedule and otherwise attempting to ensure that each parent maintains a meaningful relationship with Matthew, the judge specifically refused to set out any sort of visitation schedule at all. Instead, when counsel for Father requested that a specific visitation schedule be approved, the judge simply refused to set one, stating as his rationale that, while the request for a written visitation schedule was within the scope of Father's pleadings, "I'm just not going to do it in writing, Steve. Writing is hard for me. Writing is very difficult." In accordance with this statement, the court's handwritten docket entry did not set out a specific visitation schedule, but rather simply stated that Mother has legal and physical custody of Matthew subject to right of "reasonable visitation" of Father.

The version of Section 452.400 [4] in effect at the time of trial provided, in part, "The court shall define the noncustodial parent's visitation periods in detail at the request of either party." Any difficulty the court may have had in complying with the requirement to make specific written findings is not a valid basis for failing to comply with the requirement. If this section applies, then the trial court's failure to set out a specific visitation schedule when requested to do so was clear error.

No case has directly addressed whether the requirement of Section 452.400 that a specific visitation schedule be set is

---

4. The current version of Section 452.400, enacted in 1998, provides in relevant part, "the court shall enter an order specifically detailing the visitation rights of the parent without physical custody rights." Under the current version, a request by a party is no longer required before the trial court must enter a detailed visitation order.

applicable to unmarried parents. Militating against its application is the fact that it is a part of Chapter 452, and that chapter generally deals with dissolutions of marriage. Nothing in that chapter says it is not to be applied to cases in which the parties are not married, however, and, in fact, our courts have specifically recognized that the needs and best interests of children are the same whether or not their parents are married, and that the eight factors set out in Section 452.375 are thus to be considered in determining custody regardless of the marital status of the parents. *Harris by Harris v. Harris,* 803 S.W.2d at 169. *See also Mildred v. Darryl,* 743 S.W.2d 111 (Mo.App.1988); *David v. Cindy,* 565 S.W.2d 803 (Mo.App. 1978).

For similar reasons, our courts have held that the provisions of Section 452.402, concerning grandparent visitation, apply even if the father and mother are not married, since the statute does not provide otherwise, and since the best interests of the grandchildren would be the same regardless of whether the parents were ever actually married, despite the fact that Chapter 452 generally deals with dissolutions of marriage. *See, e.g., Farrell v. Denson,* 821 S.W.2d 547, 548–49 (Mo. App.1991); *Matter of C.E.R.,* 796 S.W.2d 423, 424 (Mo.App.1990).

The reasoning of these cases applies here. Because nothing in Section 452.400 limits its application to dissolution actions, and because the best interests of the child would be the same in regard to visitation regardless whether the parents were married at the time of the child's birth, the requirement of that section that the trial court set out a specific visitation schedule when requested to do so applies even though Matthew's parents were never married. The trial court thus erred in failing to set out specific visitation rights when requested to do so.

██ Even were Section 452.400 not directly applicable to unmarried parents, however, it is evident from the record that the trial court abused his discretion in granting Mother custody, while refusing to order a specific visitation schedule on the facts of this case, particularly where such a schedule was requested by the Father. In the absence of an order, the Mother refused to return the child to Missouri for visits with Father, refused to let Father see Matthew the one time Matthew was in Missouri, and refused to even allow telephone visits when Father so requested. The only conclusion from this record was that Mother would not allow reasonable visitation on her own, and that a specific visitation schedule was required if Father was to have any meaningful continued relationship with his son.

██ "When the discretion of the trial court is exercised without any discernible basis in the record, we, as an appellate court, are unable to conclude whether the decision was in fact in the best interests of the child. Even when we are limited, on review, to determining whether the trial court abused its discretion, the record must provide some basis for that determination." *In re Matter of Williams,* 672 S.W.2d at 396. *See also, In re Alcolac, Inc.,* 903 S.W.2d 680, 682 (Mo. App.1995) (holding that a trial court's discretion to award attorney's fees is not without limits, but rather the court must not act arbitrarily or with indifference and must give the matter proper judicial consideration).

Our consideration of all of these facts and concerns convinces us that the court gave disproportionate weight to the fact that Mathew was now residing in Mother's home, and could not have given appropriate weight to the other factors set out in Section 475.375 in ruling, for if it did it either would have given custody to Father or would have required Mother to meet a specific visitation schedule if she were to be given custody of Matthew. The court must consider all of the relevant factors under Section 452.375, without any presumption based on the fact that Mother happened to have custody at the time of the hearing.

For these reasons, we find the trial court abused its discretion in awarding sole custody to Mother, without proper consideration of the factors set out in Section 452.375, and we reverse and remand with directions to the trial court to revisit the custody issue by applying the correct standard for an initial custody determination pursuant to the factors set out in Section 452.375, always keep-

ing in mind that the ultimate issue is the best interests of Matthew.[5]  *See Dent v. Dent,* 965 S.W.2d 230 (Mo.App.1998) (holding it was abuse of discretion to award custody to mother where statutory factors favored father and mother was unlikely to allow meaningful contact with father).  Because we agree with Father that the trial court's decision appears to be contrary to the overwhelming weight of the evidence, on remand, the trial court should explain fully in its findings of fact and conclusions of law the basis for its decision.  *See Vermillion v. Pioneer Gun Club,* 918 S.W.2d 827, 832 (Mo.App.1996).

## IV.  ERROR IN ADOPTION OF MOTHER'S FORM 14

Father also argues the court erred in adopting Mother's From 14 because it was not properly computed.  Because this matter may recur on remand, we address it briefly.

■■■■■ Father claims that Mother's Form 14 showed a child care cost which did not take into account the federal tax credit and medical insurance costs paid by Father.  Both Section 452.340.7 and Rule 88.01 mandate the consideration of the guidelines in all awards of child support.  The use of Form 14 in calculating child support is mandatory; absent a finding that the amount determined thereby is unjust or inappropriate, it must be used in determining the amount of child support to be awarded.  *Woolridge v. Woolridge,* 915 S.W.2d 372, 378 (Mo.App.1996).  "The Form 14 worksheet and its directions for completion mandate which items are to be considered in the calculation and constitute a "formula" for determining the presumed correct child support amount as envisioned by § 452.340.7 and Rule 88.01."  *Id.* at 379.

At the time of the hearing in this matter, line 4(b) of the presumed child support amount calculation worksheet provided, "Custodial parents reasonable work-related child care costs (Actual costs less federal tax

credit)."  The directions for completion of Form 14 instructed the preparer to:

> Enter the reasonable monthly work-related child care costs less any federal income tax credit available to the custodial parent.  To determine the allowable tax credit percentage, use the custodial parent's gross income on line 1.

(Worksheet, line 4b).  The court was thus to deduct any allowable federal income tax credit in determining the amount to award.  It erred in failing to do so.

Since the original hearing in this matter, Form 14 has been revised and treatment of the tax credit is now provided for in line 6(a).  The comments to line 6(a) contain a tax credit worksheet, which should be utilized on remand.

■■■■ Father also argues the trial court erred in not considering the health insurance paid by him.  Line 4(c) of the presumed child support amount calculation worksheet and directions provided at the time of the hearing below:

> c.  Health insurance cost for minor child or children (who are subject to this order).  Enter the amount actually paid by the parent or that the employer actually deducts from the parent's paycheck, on a monthly basis, for health insurance benefits.  The amount included in the child support calculation is the amount of the health insurance premium actually attributable to the child(ren) subject to the order.  If this amount is not available or cannot be verified, the total cost for the premium is divided by the total number of persons covered by the policy and then multiplied by the number of children covered by the policy who are subject to the order.

(Worksheet, Line 4c).  Mother's Form 14 did not take into account health insurance for

---

5.  Father also contends the trial court should have considered joint custody as an appropriate arrangement for Matthew.  Section 452.375.4 provides:

> Prior to awarding the appropriate custody arrangement in the best interest of the child, the court shall consider each of the following as follows:

> (1) Joint custody to both parents, which shall not be denied solely for the reason that one parent opposes a joint custody award;
> (2) Sole custody to either parent; or
> (3) Third party custody or visitation.

§ 452.375.4.  The trial court may consider this option on remand.  *See, e.g., Burkhart v. Burkhart,* 876 S.W.2d 675 (Mo.App.1994).

Matthew. Father's Form 14, which assumed he would be the custodial parent, included the $20.00 per month it would cost him to add Matthew as a covered dependent on his employment-related health insurance. Father alleges error in treatment of these amounts in its order. We also note that the treatment of health insurance has been moved to line 6(c) of Form 14. The treatment of health insurance costs should be redetermined below in light of the court's ruling on custody on remand and in light of the new comments to line 6(c).

## V. RETROACTIVITY OF CHILD SUPPORT AWARD

In his final point, Father argues the trial court erred in ordering child support retroactive

to August 12, 1997, the date that Mother moved to Portland, Oregon. The right to retroactive child support is governed by Section 210.841.7. That section provides that "any award for periodic child support *may be retroactive to the date of service of the original petition upon the obligor*" (emphasis added). The date of service of Mother's counter-petition is October 30, 1997. The trial court erred in ordering the support retroactive to a point earlier than that date.

For all of these reasons, the judgment is reversed and remanded for a redetermination of custody and visitation, and for a redetermination of child support, in accordance with this opinion.

Chief Judge PATRICIA BRECKENRIDGE and Judge PAUL M. SPINDEN, concur.